UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

It's All Happening LLC dba New Law Business
Model,

                Plaintiff,

    -against-

Laura E. Cowan, Esq. dba Law Office of Laura E.
Cowan PLLC, and Take Big Steps LLC fka
Laura Cowan International LLC,

                Defendants.

--------------------------------------------------------------X

Civil Action No.

**Jury Trial**

<u>**COMPLAINT**</u>

It's All Happening, LLC dba New Law Business Model ("**NLBM**"), through its counsel, files the following Complaint against Defendants Laura Cowan, Esq. dba Law Office of Laura E. Cowan PLLC ("**Cowan**") and Take Big Steps LLC fka Laura Cowan International LLC ("**TBS**") (collectively, the "**Defendants**") and alleges as follows:

<u>**INTRODUCTION**</u>

1.    This matter involves a dispute between and among NLBM, Cowan, and her company, TBS, relating to Defendants' unauthorized use, promotion and sale of NLBM resources, materials and systems, or derivations thereof, to lawyers for the purpose of teaching and training them how to market and sell their legal services under the brand "2-Hour Lifestyle Lawyer" in violation of an express, written contract between NLBM and Cowan.

2.    Upon information and belief, Cowan is a lawyer with an office located at 125 Park Avenue, New York, NY 10017.

3.    Upon information and belief, Law Office of Laura E. Cowan PLLC is Cowan's law firm.

4.    Upon information and belief, Take Big Steps LLC f/k/a Laura Cowan International

LLC is a New York limited liability company with an office at 125 Park Avenue, New York, NY 10017.

5.     Upon information and belief, Cowan is the CEO of Take Big Steps LLC.

6.     NLBM is a Nevada limited liability company with its principal place of business at 2248 Meridian Blvd, Minden, NV 89423, and a second office in Colorado.

## JURISDICTION AND VENUE

7.     This Court has personal jurisdiction over Defendants because each has, individually and in concert with the other (a) transacted business in the State of New York, and (b) offered to and contracted to supply goods or services in the State of New York.

8.     This Court has subject matter jurisdiction over NLBM's claims against Defendants within the meaning of 28 U.S.C. § 1332 because complete diversity of citizenship exists among the parties.

9.     This Court also has subject matter jurisdiction over certain of NLBM's claims against Defendants within the meaning of 28 U.S.C. § 1331 because the same arise under Section 43 of the Lanham Act, 15 U.S.C. § 1125.  This Court also has subject matter jurisdiction over NLBM's claims against Defendants within the meaning of 28 U.S.C. § 1367 because the claims are so related to claims within the original jurisdiction of this Court such that they form part of the case or controversy.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events and omissions giving rise to NLBM's claims against Defendants occurred and/or continue to occur in this District.

## FACTS

### *Ali Katz and the NLBM*

11.     Alexis Neely aka Ali Katz ("**Katz**"), the CEO and Founder of NLBM, has spent the last 17 years training lawyers on the new law business model she created while in private practice at Martin Neely & Associates, in Redondo Beach, CA.

12.     She is the author of the best-selling book on legal planning for families, *Wear Clean Underwear: A Fast, Fun, Friendly – and Essential – Guide to Legal Planning for Busy Parents* as well as the best-selling book *New Law Business Model: Build a Lucrative Law Practice You (and Your Clients) Will Love*.

13.     The first training program Katz offered to lawyers was her Client Engagement System through her company, the Family Wealth Planning Institute ("**FWPI**").  First offered in 2006, this program trained lawyers on how to engage 97.5% of the clients they met with, using Katz's system.

14.     In 2007, Katz created the Personal Family Lawyer® Program in which she gave the lawyers who enrolled with the FWPI everything she was using in her office to market to families, including the use of her best-selling book on legal planning for families that came out in 2008, and all the TV appearances she did as a family, financial and legal expert to promote that book over the years.

15.     In 2009, Katz created a system for educating business owners on what they needed to have in their business to have a solid legal, insurance, financial and tax foundation.

16.     In 2012, Katz started the New Law Business Model ("**NLBM**"), and licensed various materials from the FWPI and created materials for and on behalf of NLBM.

17.     In 2013, Katz created the Estate Planning Bootcamp.

18.     The Estate Planning Bootcamp was the first online training program of its kind that taught lawyers the foundations of how to do estate planning for families in their community, and to make sure the estate plans they were creating would actually work.  Katz has since rebranded "Bootcamp" along with the Client Engagement System, and other resources to support lawyers to educate and counsel their clients, as the Life & Legacy Planning Program.

19.     In 2014, Katz started training business lawyers on how to serve business owners as a true trusted advisor, instead of a one-off transaction provider who was not really helping their clients build businesses they could count on.

20.     In 2015, Katz created the Family Business Lawyer Program, combining all of her programs for serving families and business owners into one single ongoing program with coaching, training and business-building support, as well as licensed materials for educating the community and engaging and serving clients.

21.     In approximately 2017, Katz decided to combine all of her teachings and courses into a single, streamlined step-by-step, curriculum and program for serving families with next-level estate planning, as she taught the same, known as the "New Law Business Model Program."

22.     NLBM provides lawyers, and estate planning lawyers in particular, with resources, materials and training systems to sell and market their services to clients, including how to price and package their services by way of works like the Family Wealth Planning Session.

23.      The Family Wealth Planning Session is a 2-hour planning session process that Katz developed to help her clients consider their family dynamics, and their assets, with application of the law to choose the right estate plan for themselves and their family. It's a heart-centered counseling based methodology that was developed in her own law practice from 2003 through

2006 when she began teaching it to other lawyers

24.      In 2018, Katz started the Lifestyle Lawyer's Club Facebook Group, managed by herself and members of the NLBM team, which has almost 2,000 members and is a forum for entrepreneurial lawyers interested in estate planning.

25.      Katz maintains an active law license and members of her NLBM team, specifically the 10 "Law Business Mentors" who teach and train the NLBM Program with Katz, also have active law licenses.

26.      Katz and her NLBM team have invested thousands of man-hours to create the NLBM curriculum, and they have trained over 3,000 lawyers on the new law business model, including Laura E. Cowan, Esq. ("**Cowan**").

### *Laura Cowan and her Agreement with NLBM*

27.      Upon information and belief, Cowan began practicing law in 2014, focusing on estate planning, and started her own law firm in 2016 – Law Office of Laura E. Cowan PLLC.

28.      On or around February 27, 2016, Cowan enrolled in and paid NLBM $3,000 for the "Estate Planning Bootcamp" Program, which included access to and receipt of digital materials and coaching.

29.      On or around January 11, 2017, Cowan enrolled in and paid NLBM $1,030 for the "Client Engagement System," which included access to and receipt of digital materials, including presentation slides, and coaching on sales and marketing techniques for estate planning lawyers. Through these two NLBM programs (Estate Planning Bootcamp and Client Engagement System), Cowan could use NLBM's proprietary Family Wealth Plan fee schedule and licensed materials with two of her personal clients – but no more.

30.     On or around February 16, 2017, Cowan entered into a contract with NLBM (the "**Agreement**") to enroll as a Family Business Lawyer and paid $6,015 for a six-month license for the non-exclusive use of the materials, resources and systems associated with the Family Business Lawyer Program.   More specifically, this included use of NLBM's marketing content, presentations, the LIFT program for business owners, coaching support, the proprietary Family Wealth Plan fee schedule, and the Family Wealth Planning Session for any of Cowan's personal clients for as long as Cowan remained a licensed Personal Family Lawyer® or Family Business Lawyer in good standing.   The Agreement is attached hereto as **Exhibit A**.

31.     Between August 29, 2017, and June 29, 2018, Cowan enrolled in the Personal Family Lawyer® "Silver" program and paid $4,367 for continued access to the same materials available to her as a licensed Family Business Lawyer with two exceptions: (a) no coaching support, and (b) no access to the materials for serving business owners.   The materials and techniques from the Estate Planning Bootcamp, Client Engagement System, Family Business Lawyer Program, and Personal Family Lawyer® Program are hereinafter collectively referred to as the "NLBM Programs."

32.     In the Agreement, Cowan agreed "not to rent, loan, resell, distribute or otherwise assign or transfer any work or derivative work based on materials in the program."   *Id.*

33.     In the Agreement, Cowan agreed "that all materials and information provided to [her] by NLBM are its confidential and proprietary intellectual property" and "may only be used by [her] as authorized by NLBM."   *Id.*

34.     Cowan maintained her membership in the Personal Family Lawyer® Program until June 2018, when she paid $2,100 to terminate her membership and the balance of her payments due.

35.     Altogether, and for over two years between February 2016 thru June 2018, Cowan paid NLBM $17,012.00 for access to and to otherwise participate in NLBM Programs.

### *Cowan's Breach of the Agreement*

36.     After the termination, Cowan and/or Cowan's Firm started using what she learned from NLBM Programs to coach and train other lawyers to better market and sell their services, and in or around March 2021, formally launched "Laura Cowan International LLC" to, upon information and belief, supplement the income from her law practice.

37.     Cowan, on behalf of herself and/or Laura Cowan International LLC, used NLBM Programs to create the "2-Hour Lifestyle Lawyer" ("**2HLL**") program and brand, and in September 2022, filed a trademark application with the United States Patent and Trademark Office for "2-Hour Lifestyle Lawyer."

38.     The 2HLL program includes online coaching from Cowan that purports to teach attorneys the very same marketing and sales techniques for estate planning lawyers that she learned and licensed from NLBM Programs, using, promoting and selling the same work, or derivative work, from NLBM Programs.

39.     The term "2-Hour Lifestyle Lawyer" is similar to the "Lifestyle Lawyer's Club" Facebook Group started in 2018, and is causing confusion with the Lifestyle Lawyer's Club Facebook Group and lawyers considering joining NLBM.

40.     Upon information and belief, Cowan chose the term "2-Hour Lifestyle Lawyer" intentionally to cause confusion with the "Lifestyle Lawyer's Club" Group led by NLBM.

41.     Upon information and belief, Cowan, first through Laura Cowan International LLC and later through TBS, obtains most of her customers by running ads targeted to members of the Lifestyle Lawyer's Club Facebook Group.

42.     In or around February 2023, NLBM first became aware that Cowan and/or TBS was running ads for 2HLL and otherwise using NLBM intellectual property and content to promote to, teach and train lawyers how to market their services.

43.     Cowan's 2HLL program is similar to the NLBM Programs, and Cowan's ads are likely to induce, and have already induced, customers to purchase the 2HLL program believing it to be one of the NLBM Programs and/or affiliated with NLBM or the Lifestyle Lawyer's Club Facebook Group managed by NLBM.

44.     Indeed, Cowan's name comes up on 25% of NLBM's sales calls where potential customers inquire about whether there is a difference between the NLBM Programs and Cowan's 2HLL program.

45.     Cowan's 2HLL program contains information and terms of art copied from and/or derivative of NLBM Programs.  For example:

a.     Cowan's 2HLL Peace of Mind Planning Session "what to expect" document (**Exhibit B.1**) is copied from NLBM's Family Wealth Planning Session "what to expect" document (**Exhibit B.2**), with just a variation of the name of the Planning Session, but with the rest of the content taken directly from, and/or derivative of, the Family Wealth Planning Session in the NLBM Programs.

i.     The NLBM Family Wealth Planning Session's "what to expect" document, which the NLBM provided and taught to Cowan and other Personal Family Lawyer® members and is otherwise proprietary, details how to prepare prospects to come in and be ready to engage their services.  The second and third paragraphs in Exhibit B.2 specifically reference what will happen during that initial prospect meeting, including walking the prospect through "what would happen" if something were to happen to the prospect now, if the prospect is fine with "what would happen," and if not, designing an estate plan accordingly. Cowan's Peace of Mind Planning Session's "what to expect" document graphically represents the same content above – especially steps 2 & 3 in Exhibit B.1. *Cf.* Exhibit B.1 and Exhibit B.2.

ii.     The NLBM Family Wealth Planning Session's agenda document (**Exhibit C**), which the NLBM provided and taught to Cowan and other Personal Family Lawyer® members and is otherwise proprietary, outlines the process and objectives for their initial meeting with prospects (*e.g.*, deciding whether there is a "fit").  Cowan's Peace of Mind Planning Session's "what to expect" document incorporates these same concepts (*e.g.*, "[d]ecide if we are a good fit to work together") from NLBM's agenda into her step 1 in Exhibit B.1., and her referenced agenda is derivative of NLBM's agenda at Exhibit C.  *Cf.* Exhibit B.1 and Exhibit C.

iii.    The NLBM provided and taught to Cowan and other Personal Family Lawyer® members how to design an estate plan for their clients using a whiteboard with a proprietary 45 minute video of Katz doing the same ("**Katz Plan Design Video**").  Cowan references a whiteboard in step 4 of her Peace of Mind Planning Session's "what to expect" document.  ("This is when I pull out the whiteboard and start drawing?  I'll do a comprehensive presentation of your options – a will versus a trust – using your family's information as an example.")  *See* Exhibit B.1.  Cowan is copying the NLBM Programs by teaching lawyers how to use a whiteboard to design and sell estate plans for their clients the same way the NLBM taught Cowan and other Personal Family Lawyer® members how to use a whiteboard to design and sell estate plans for their clients.

iv.     Cowan's 2-HLL's Peace of Mind Planning Session even uses the term "Family Wealth Plans," which is a term of art copied from and proprietary to the Family Wealth Planning Session fee quoting process Cowan learned from the NLBM: "Once you fully understand your options, I'll show you our Family Wealth Plans and unique flat fee pricing.  Then, if we decide we are a good fit to work together, we'll discuss next steps.  And if not, that's fine too!  You'll leave more clear than ever before about your finances and how to protect your loved ones."  *See* Exhibit B.1.  Katz designed the "Family Wealth Plans" fee quoting process and fee schedule to present planning options and guide clients to choose their own fees in 2005, began teaching this process to lawyers with the fee schedule named "Family Wealth Plans" and the associated process to present them in 2006, and through the NLBM still teach and sell them today (**Exhibit D**).  *Cf.* Exhibit B.1 and Exhibit D.  This was the process Cowan learned from the NLBM and is now teaching to other lawyers.

b.      Cowan's 2-HLL's sample[1] "Estate Plan Design Meeting, Items To Be Discussed" (**Exhibit E**) consists of fact gathering questions to prospects in connection with designing estate plans for them, which is copied from, and/or derivative of, the NLBM's Katz Plan

---

[1] Katz received a copy of this document from one of her NLBM members who received it from a customer of 2-Hour Lifestyle Lawyer, who was sharing the 2-Hour Lifestyle Lawyer course materials.

Design Video, where Katz asks these questions to actual clients while designing different estate plan options for them on a whiteboard.

c.     Cowan's 2-HLL "Estate Planning in Uncertain Times" presentation (**Exhibit F.1**) is copied from, and/or derivative of, presentations NLBM provided to Cowan and other members in the Personal Family Lawyer® Program, such as **Exhibit F.2**.  Even Cowan's law firm logo on Exhibit F.1 stylistically mirrors, and is derivative of, the Martin Neely & Associates logo on Exhibit F.2.  *Cf.* Exhibit F.1 and Exhibit F.2.

d.     Cowan's 2HLL "Estate Planning in Uncertain Times" presentation contains a slide on p. 69 – "5-Step Family Wealth Planning Process."  *See* Exhibit F.1.  Cowan copied this terminology, content and process from the NLBM's 3-Step Family Wealth Planning Process (*i.e.*, Family Wealth Planning Session, Signing Meeting and Final Meeting), which was licensed and taught to Cowan during her Personal Family Lawyer® membership, attached as **Exhibit G**.  More specifically, Cowan merely changed the planning session name from "Family Wealth" to "Peace of Mind," and added two "steps" that are already parts of NLBM's 3-Step process ("design meeting" is part of step 1) and Signing Meeting ("document review" is part of step 2).  *Cf.* Exhibit F.1 and Exhibit G.  The content is otherwise the same and uses the name "Family Wealth Planning Process."

e.     The 2HLL sample[2] "Estate Planning for Busy Parents" presentation (**Exhibit H**) is copied from, and/or derivative of, NLBM Programs taught to Cowan.  First and foremost, the majority of the slides from the Busy Parents presentation are copies of the Uncertain Times presentation.  Upon information and belief, Cowan has used, and is using, the Busy Parents presentation to show her clients how they can take her Uncertain Times presentation (Exhibit F.1)

---

[2] Katz received a copy of this document from one of her NLBM members who received it from a customer of 2-Hour Lifestyle Lawyer, who was sharing the 2-Hour Lifestyle Lawyer course materials.

and create a presentation for themselves by changing some colors and words here and there –*i.e.*, making it derivative.  For example, p. 61 of the Busy Parents presentation uses the same "5-Step Family Wealth Planning Process" slide used with the Uncertain Times presentation on p. 69 (which is derivative of the process Cowan learned from the NLBM), but for the fact that the Busy Parents slide is a "6-Step" process with a slightly different name ("The 6-Step Plan and Protect Process"). *Cf.* Exhibit F.1 and Exhibit H.

46.     In sum, Cowan, either on her own or through Cowan's Firm and/or TBS, is promoting to, teaching, training and selling to other lawyers how to use and manipulate content from NLBM resources to call it their own.  These are only a few of the 2HLL resources NLBM has obtained and nearly every single one is either a copy, or derivative, of NLBM Program resources.  Upon information and belief, there are many more examples in the possession of Cowan and/or TBS.

47.     Cowan could not have set-up and operated her 2HLL program to sell to other lawyers without violating the Agreement and using the marketing and sales materials and techniques she accessed and licensed from NLBM in 2016 thru 2018.

48.     To the extent there are subtle differences between NLBM Programs and Cowan's 2HLL program, they are virtually the same and overlap in key areas (*i.e*., Family Wealth Planning Session, Family Wealth Plans and fee presentation and quoting process).

49.     In or around February 2023, NLBM first became aware that Cowan and/or TBS was running ads for 2HLL and otherwise using NLBM intellectual property and content to teach and train lawyers how to market their services.  Since February 2023, through myself and my attorneys, we repeatedly asked to discuss potential collaborative options with Cowan, and upon

such time as Cowan refused, then demanded that Cowan stop using NLBM Program materials to teach lawyers how to market and sell their services.  Cowan has refused to stop.

50.     Defendants' actions have damaged NLBM's financial viability.  One hundred percent of NLBM's revenue is generated teaching, training and coaching lawyers how to market and sell their estate planning services using the same materials licensed to Cowan between 2016 and 2018, which Cowan, through TBS, is now using to promote to, teach, train and coach lawyers.  Cowan, through TBS, is stealing customers from NLBM by using NLBM materials, and derivative materials, and intentionally causing customer confusion with the Lifestyle Lawyer's Club Facebook Group and NLBM Programs.

51.     Cowan, through TBS, is also misleading the public about Katz's qualifications and NLBM Law Business Mentor's qualifications in an attempt to unlawfully elevate her 2HLL program over NLBM in the market.  Proof of this exists in Cowan's own website where she says: "The best part?  2-Hour Lifestyle Lawyer is taught by a practicing estate planning attorney, *not a non-attorney or someone who left the law years ago*."  *See* **Exhibit I** (emphasis added).  Cowan recently revised this portion of her website, which only a few weeks ago stated: "The best part? 2-Hour Lifestyle Lawyer is taught by a practicing estate planning attorney using 2023 technology and systems … *not someone stuck in 2017*."  Upon information and belief, Katz is the "someone stuck in 2017" that was referenced in the aforementioned ad (recall that Cowan received materials and training from Katz and the NLBM team in 2017).  Upon information and belief, either Katz or an NLBM Law Business Mentor is the "non-attorney" or "someone who left the law years ago" referenced in Exhibit I, which is an outright lie.  Both statements amount to false advertising, and are specific attacks on Katz's reputation and qualifications, NLBM Law Business Mentors'

reputation and qualifications, and NLBM's brand and qualifications in general to teach and train lawyers.

52.     For almost three years (2016-2018), Katz and her NLBM team provided Cowan proprietary materials and techniques to better market and sell her legal services to clients, and in exchange, Cowan manipulated those same materials and techniques to promote and sell them *to other lawyers* as her own, engaged in false advertising and attacked the business reputations of Katz and NLBM in the process – all in an attempt to gain an unfair economic advantage for herself and TBS in the market.

## COUNT 1 – PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER
### (Cowan and TBS)

53.     NLBM incorporates by reference the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

54.     The preceding averments demonstrate that this Court should preliminarily enjoin Defendants from any further promotion or sale of the 2HLL program and use of NLBM's intellectual property and content to promote to and teach lawyers how to market and sell their services, because:

  a.     An injunction and temporary restraining order is necessary to prevent immediate and irreparable harm and there is otherwise no adequate remedy at law;

  b.     The harm that NLBM will suffer without injunctive relief substantially outweighs any possible harm to Defendants if the injunction and temporary restraining order is granted, especially since Cowan can continue to practice law and serve her clients with their estate planning needs;

c.     A preliminary injunction and temporary restraining order will properly restore the parties to their status immediately prior to the alleged wrongful conduct;

d.     The activity to be restrained is actionable, the right to relief is clear, and the wrong is manifest, or, in other words, the party seeking the injunction and temporary restraining order is likely to prevail on the merits;

e.     The injunction and temporary restraining order is reasonably suited to abate the offending activity; and

f.     A preliminary injunction and temporary restraining order will not adversely affect the public interest.

55.     WHEREFORE, Plaintiff NLBM requests that this Court issue a preliminary injunction and temporary restraining order enjoining Defendants and any other entity controlled, directly or indirectly, by one or both Defendants from promoting to, teaching and training lawyers how to sell and market their services under the 2HLL brand, or otherwise using NLBM intellectual property or content, or derivative versions thereof, to promote to, teach and train lawyers how to sell and market their services until such time as the disputes hereunder are fully resolved.

**COUNT 2 – DECLARATORY JUDGMENT THAT 2HLL COURSE MATERIALS ARE COPIES AND/OR DERIVATIVE OF NLBM COURSE MATERIALS**
**(Cowan and TBS)**

56.     NLBM incorporates by reference the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

57.     Cowan accessed and received NLBM Program course materials pursuant to the Agreement.

58.     The NLBM Program course materials include the Estate Planning Bootcamp, Client Engagement System, Family Business Lawyer Program and Personal Family Lawyer®

Program (the "**NLBM Programs**").

59.     Defendants' 2HLL program includes online coaching from Cowan that purports to teach attorneys the same marketing and sales techniques for estate planning lawyers that she learned from the NLBM Programs, using, promoting and selling the same work, and/or derivative work, from the NLBM Programs.

60.     The 2HLL program contains information and terms of art copied from and/or derivative of the NLBM Programs.  For example:

a.     Cowan's 2HLL Peace of Mind Planning Session "what to expect" document (**Exhibit B.1**) is copied from the NLBM's Family Wealth Planning Session "what to expect" document (**Exhibit B.2**), with just a variation of the name of the Planning Session, but with the rest of the content taken directly from, and/or derivative of, the Family Wealth Planning Session in the NLBM Programs.

    i.     The NLBM Family Wealth Planning Session's "what to expect" document, which the NLBM provided and taught to Cowan and other Personal Family Lawyer® members and is otherwise proprietary, details how to prepare prospects to come in and be ready to engage their services.  The second and third paragraphs in Exhibit B.2 specifically reference what will happen during that initial prospect meeting, including walking the prospect through "what would happen" if something were to happen to the prospect now, if the prospect is fine with "what would happen," and if not, designing an estate plan.  Cowan's Peace of Mind Planning Session's "what to expect" document graphically represents the same content above – especially steps 2 & 3 in Exhibit B.1.  *Cf.* Exhibit B.1 and Exhibit B.2.

    ii.     The NLBM Family Wealth Planning Session's agenda document (**Exhibit C**), which the NLBM provided and taught to Cowan and other Personal Family Lawyer® members and is otherwise proprietary, outlines the process and objectives for their initial meeting with prospects (*e.g.*, deciding whether there is a "fit").  Cowan's Peace of Mind Planning Session's "what to expect" document incorporates these same concepts (*e.g.*, "[d]ecide if we are a good fit to work together") from the NLBM's agenda into her step 1 in Exhibit B.1., and her referenced agenda is derivative of the NLBM's agenda at Exhibit C.  *Cf.* Exhibit B.1 and Exhibit C.

iii.     The NLBM provided and taught to Cowan and other Personal Family Lawyer® members how to design an estate plan for their clients using a whiteboard with a proprietary 45 minute video of Katz doing the same ("**Katz Plan Design Video**").  Cowan references a whiteboard in step 4 of her Peace of Mind Planning Session's "what to expect" document.  ("This is when I pull out the whiteboard and start drawing?  I'll do a comprehensive presentation of your options – a will versus a trust – using your family's information as an example.")  *See* Exhibit B.1.  Cowan is copying the NLBM Programs by teaching lawyers how to use a whiteboard to design and sell estate plans for their clients the same way the NLBM taught Cowan and other Personal Family Lawyer® members how to use a whiteboard to design and sell estate plans for their clients.

iv.     Cowan's 2-HLL's Peace of Mind Planning Session (Exhibit B.1) even uses the term "Family Wealth Plans," which is a term of art copied from and proprietary to the Family Wealth Planning Session fee quoting process Cowan learned from the NLBM: "Once you fully understand your options, I'll show you our Family Wealth Plans and unique flat fee pricing.  Then, if we decide we are a good fit to work together, we'll discuss next steps.  And if not, that's fine too! You'll leave more clear than ever before about your finances and how to protect your loved ones."  I designed the "Family Wealth Plans" fee quoting process and fee schedule to present planning options and guide clients to choose their own fees in 2005, began teaching this process to lawyers with the fee schedule named "Family Wealth Plans" and the associated process to present them in 2006, and through the NLBM still teach and sell them today (**Exhibit D**).  *Cf.* Exhibit B.1 and Exhibit D.  This was the process Cowan learned from the NLBM and is now teaching to other lawyers.

b.     Cowan's 2-HLL's sample[3] "Estate Plan Design Meeting, Items To Be Discussed" (**Exhibit E**) consists of fact gathering questions to prospects in connection with designing estate plans for them, which is copied from, and/or derivative of, the NLBM's Katz Plan Design Video, where Katz asks these questions to actual clients while designing different estate plan options for them on a whiteboard.

c.     Cowan's 2-HLL "Estate Planning in Uncertain Times" presentation (**Exhibit F.1**) is copied from, and/or derivative of, presentations the NLBM provided to Cowan and other members in the Personal Family Lawyer® Program, such as the attached hereto as

---

[3] Katz received a copy of this document from one of her NLBM members who received it from a customer of 2-Hour Lifestyle Lawyer, who was sharing the 2-Hour Lifestyle Lawyer course materials.

**Exhibit F.2**.  Even Cowan's law firm logo on Exhibit F.2 stylistically mirrors, and is derivative of, the Martin Neely & Associates logo on Exhibit F.1.  *Cf.* Exhibit F.1 and Exhibit F.2.

        d.      Cowan's 2HLL "Estate Planning in Uncertain Times" presentation contains a slide on p. 69 – "5-Step Family Wealth Planning Process."  *See* Exhibit F.1.  Cowan copied this terminology, content and process from the NLBM's 3-Step Family Wealth Planning Process (*i.e.*, Family Wealth Planning Session, Signing Meeting and Final Meeting), which was licensed and taught to Cowan during her Personal Family Lawyer® membership, attached hereto as **Exhibit G**.  More specifically, Cowan merely changed the planning session name from "Family Wealth" to "Peace of Mind," and added two "steps" that are already parts of the NLBM's 3-Step process ("design meeting" is part of step 1) and Signing Meeting ("document review" is part of step 2).  *See* Exhibit F.1.  The content is otherwise the same and uses the name "Family Wealth Planning Process."

        e.      The 2HLL sample[4] "Estate Planning for Busy Parents" presentation (**Exhibit H**) is copied from, and/or derivative of, the NLBM Programs taught to Cowan.  First and foremost, the majority of the slides from the Busy Parents presentation are copies of the Uncertain Times presentation.  Upon information and belief, Cowan has used, and is using, the Busy Parents presentation to show her clients how they can take her Uncertain Times presentation (Exhibit F.1) and create a presentation for themselves by changing some colors and words here and there –*i.e.*, making it derivative.  For example, p. 61 of the Busy Parents presentation uses the same "5-Step Family Wealth Planning Process" slide used with the Uncertain Times presentation on p. 69 (which is derivative of the process Cowan learned from the NLBM), but for the fact that the Busy Parents slide is a "6-Step" process with a slightly different name ("The 6-Step Plan and Protect Process").

---

[4] Katz received a copy of this document from one of her NLBM members who received it from a customer of 2-Hour Lifestyle Lawyer, who was sharing the 2-Hour Lifestyle Lawyer course materials.

*Cf.* Exhibit F.1 and Exhibit H.

61.     These are only a few of the 2HLL resources NLBM has obtained and nearly every single one is either an exact copy, or closely derivative, of NLBM Program resources.  Upon information and belief, there are many more examples in the possession of Cowan and/or TBS.

62.     There is an actual, current and justiciable controversy between the parties as to whether Defendants created their own, original 2HLL course materials or whether the Defendants' 2HLL materials are copies or "derivative works" of the NLBM course materials in violation of the Agreement.

63.     WHEREFORE, Plaintiff NLBM requests that this Court enter a Judgment in favor of NLBM and against Defendants pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 by declaring Defendants' 2HLL course materials and techniques copies and/or "derivative works" of the NLBM course materials.  *See* Exhibits B-H attached hereto.

### COUNT 3 – BREACH OF CONTRACT AS TO AGREEMENT
### (Cowan only)

64.     NLBM incorporates by reference the preceding Paragraphs of this Counterclaim as if the same were set forth fully herein.

65.     The Agreement is a separate valid, binding, and enforceable contract between NLBM and Cowan.

66.     Pursuant to the Agreement, Cowan agreed that "the ownership of the Programs, including the intellectual property and content of the Programs, is the property of FWPI, NLBM, or their affiliates, and at no time does the copyright, trademarks or other intellectual property transfer to [Cowan]."

67.     Pursuant to the Agreement, Cowan agreed "not to rent, loan, resell, distribute or otherwise assign or transfer any work or derivative work based on materials in the program, NLBM

or FWPI's copyright, patent, trademark, trade secret or other intellectual property rights."

68.     Pursuant to the Agreement, Cowan agreed that all materials and information provided to [her] by NLBM are its confidential and proprietary intellectual property, being (sic) solely and exclusively to NLBM and may only be used by [her] as authorized by NLBM."

69.     Pursuant to the Agreement, Cowan agreed that "the reproduction, distribution and sale of these materials by anyone but NLBM is strictly prohibited."

70.     Pursuant to the Agreement, Cowan agreed that "NLBM shall be the exclusive owner of all right, title, interest in and to all the materials licensed to [her] and "to pay NLBM all reasonable collection and attorneys' fees incurred by NLBM whether incurred prior to or after the commencement of formal legal action."

71.     Cowan breached the Agreement, in the first instance, by disclosing and assigning work, or derivative work, including, but not limited to, intellectual property and content from the NLBM Programs, to Laura Cowan International LLC and, later, to TBS.

72.     Cowan breached the Agreement, in the second instance, by forming Laura Cowan International LLC and, later, TBS, for the purpose of using the NLBM Program course materials and techniques, and derivative versions thereof, to teach lawyers how to sell and market their services to the detriment of NLBM.

73.     Cowan's breaches of the Agreement have proximately caused NLBM to suffer irreparable harm for which there is no adequate remedy at law and Defendants have wrongfully profited from such breaches.

74.     WHEREFORE, Plaintiff NLBM requests that this Court enter Judgment in its favor on Count 3 and against Defendant Cowan and grant NLBM the relief set forth in its Prayer for Relief.

### COUNT 4 – TORTIOUS INTERFERENCE WITH CONTRACTUAL RIGHTS
### (TBS only)

75.     NLBM incorporates by reference the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

76.     The Agreement is a separate valid, binding, and enforceable contract between NLBM and Cowan.

77.     TBS f/k/a Laura Cowan International LLC, was formed by Cowan, and knew about the Agreement.

78.     TBS, through the conduct of its CEO Cowan, intentionally procured Cowan's breach of the Agreement without justification.

79.     Cowan's breaches of the Agreement have proximately caused NLBM to suffer irreparable harm for which NLBM has no adequate remedy at law.

80.     WHEREFORE, Plaintiff NLBM requests that this Court enter Judgment in its favor on Count 4 and against Defendant TBS and grant NLBM the relief set forth in its Prayer for Relief.

### COUNT 5 – FALSE ADVERTISING – VIOLATION OF § 43(A) OF THE LANHAM
### ACT, 15 U.S.C. § 1125(A)
### (Cowan and TBS)

81.     NLBM incorporates by reference the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

82.     Defendants have made, and are continuing to make, literally false statements of fact regarding (a) NLBM Programs, (b) the 2HLL program, and (c) the qualifications and credentials of Katz and NLBM Law Business Mentors who teach and train the NLBM Programs.

83.     In the alternative, Defendants have made substantially misleading statements regarding the same, in advertisements and websites, as described *supra.*

84.     Upon information and belief, Cowan directed, controlled, ratified, participated in,

and/or was the active, moving force behind the actions of Defendants in creating and implementing this false and misleading advertising campaign against NLBM.

85.     Upon information and belief, Defendants intentionally set out to deceive NLBM's existing and prospective customers with respect to the qualifications and credentials of Katz and other members of the NLBM team.

86.     Upon information and belief, the deliberate conduct of Defendants is egregious in nature.

87.     In the alternative, Defendants' false or misleading statements have the tendency to deceive a substantial portion of the intended audience of customers.

88.     Upon information and belief, Defendants acted in active concert or participation with each other to prepare and disseminate false and misleading information regarding NLBM Programs and the 2HLL program and, therefore, are jointly and severally liable to NLBM.

89.     Defendants' false or misleading statements are material in that they are likely to influence purchasing decisions.

90.     The 2HLL program is sold and otherwise travels in interstate commerce.

91.     Defendants' false or misleading statements have proximately caused NLBM to suffer irreparable harm and incur damages, including without limitation damage to its reputation, and Defendants have wrongfully profited from such false and misleading statements.

92.     WHEREFORE, Plaintiff NLBM requests that this Court enter Judgment in its favor on Count 5 and against Defendants Cowan and TBS, and grant NLBM the relief set forth in its Prayer for Relief.

## COUNT 6 – COMMON LAW UNFAIR COMPETITION
### (Cowan and TBS)

93.     NLBM incorporates by reference the preceding Paragraphs of this Complaint as if the same were set forth fully herein.

94.     Defendants engaged in common law unfair competition through deceptive marketing when they made false and misleading statements regarding the qualifications and credentials of Katz and the rest of her NLBM team as described *supra.*

95.     Defendants engaged in common law unfair competition by misappropriating intangible trade values, specifically the confidential trade information from NLBM described *supra*, and by using such confidential trade information to unfairly compete directly against NLBM.

96.     Defendants engaged in common law unfair competition when they injured NLBM's goodwill with existing and prospective customers by making false and misleading statements regarding the qualifications and credentials of Katz and the rest of her NLBM team and by using NLBM's confidential trade information to unfairly compete directly against NLBM.

97.     Upon information and belief, Defendants acted in active concert or participation with each other to prepare and disseminate false and misleading information regarding NLBM Programs and the 2HLL program and, therefore, are jointly and severally liable to NLBM.

98.     Defendants' unfair competition proximately caused NLBM to suffer irreparable harm and incur damages, including without limitation damage to its reputation, and Defendants have wrongfully profited from unfair competition.

99.     WHEREFORE, Plaintiff NLBM requests that this Court enter Judgment in its favor on Count 6 and against Defendants Cowan and TBS, and grant NLBM the relief set forth in its Prayer for Relief.

## PRAYER FOR RELIEF

100.     WHEREFORE, Plaintiff NLBM prays for Judgment in its favor and against Defendants as follows:

101.     For injunctive relief against Defendants, as well as their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with any of the Defendants:

a.     Prohibiting Defendants from using, misappropriating, disclosing, or transmitting NLBM Program material, or derivations thereof, including, but not limited to, the 2-Hour Lifestyle Lawyer course materials to teach and train lawyers how to market and sell their services;

b.     Prohibiting Defendants from using, misappropriating, disclosing, or transmitting NLBM Program material, or derivations thereof, in any way, to solicit, serve, contact, or communicate with in any way, NLBM clients, prospective clients and contacts;

c.     Prohibiting Defendants from using NLBM Program materials acquired from NLBM, and all materials (in written, electronic, or other form) containing or derived from any such information, and all copies of such materials, to teach and train lawyers how to market and sell their services; and

d.     Prohibiting Defendants from making false, misleading, disparaging or negative statements regarding the qualifications and credentials of Katz and the rest of her NLBM team.

102.     For the imposition of a constructive trust on all profits and monies realized by

23

Defendants as a result of the conduct described *supra*;

103.   For joint and several liability among Defendants;

104.   For restitution and disgorgement of monies acquired by any one or more Defendants as a result of the conduct described *supra*;

105.   For compensatory damages, plus pre-judgment and post-judgment interest thereon at the maximum legal rate;

106.   For its attorneys' fees and court costs pursuant to the Agreement; and

107.   For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a Jury Trial on all issues so triable.

Dated:   Uniondale, New York
          June 1, 2023

WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP

By: _____
    Jay S. Hellman, Esq.
    1201 RXR Plaza
    Uniondale, New York 11556
    (516) 622-9200
    jhellman@westermanllp.com
    *Attorneys for Plaintiff*

2803352v.2

24